OPINION OF THE COURT
Millard L. Midonick, J.
These cross motions for summary judgment in a pending executors’ accounting raise significant issues with respect to the operation and effect of an outright pecuniary marital deduction formula legacy. The decedent executed his will in 1976 and died in the same year. The two primary beneficiaries under the will are decedent’s wife and his sister. The wife receives legacies of cash and tangibles and an outright marital deduction formula legacy in a form sometimes characterized as hybrid. The residuary estate goes to the sister. The wife filed a notice of election. In summary form, the issues are (1) whether the marital deduction formula’s reduction of the widow’s legacy by the value of the property passing to her outside of the will gives her a right to one half of the estate’s income and appreciation because it gives her a limited right of election. The limited right of election asserted arises from the exempt property which passes to the wife under EPTL 5-3.1 which the literal language of the formula appears to offset against her legacy, thereby giving her less than her elective share; and (2) whether the widow is entitled to appreciation on the marital deduction legacy.
1. THE WIDOW’S CLAIM TO INCOME AND APPRECIATION ON ONE HALF OF THE NET ESTATE BY VIRTUE OF HER RIGHT OF ELECTION:
The decedent bequeathed to his wife all of his tangible personalty including household furnishings (art third), the sum of $10,000 (art sixth) and “an amount equal to one-half (y2) of the value of my adjusted gross estate as finally determined in the Federal estate tax proceeding in my estate, reduced, however, by the aggregate value of all other interests in property, if any, which pass or have passed to my said wife under other provisions of this Will, any Codicil hereto, or from me otherwise than under this Will or any Codicil hereto, but only to the extent that such *855 other interests are allowed as a marital deduction in the Federal estate tax proceeding in my estate, such values of my adjusted gross estate and of such other interests in property being those finally determined for Federal estate tax purposes.” (Art eighth; emphasis added.)
In this estate the exempt property passing to the widow under EPTL 5-3.1 consists of $1,000 in cash and household furnishings valued at $5,000. These pass to the widow under the statute rather than by virtue of the bequests of cash and tangibles to her. The statute is clear that these assets are not a part of the estate for fiduciary accounting purposes and the executors concede that they must be deducted and set off to the widow before determining whether the testamentary dispositions satisfy the widow’s right of election under EPTL 5-1.1. The widow’s elective share here is one half. (EPTL 5-1.1, subd [c], par [1], cl [B].) There are apparently no nontestamentary transfers includible in this estate for Federal estate tax purposes so that the gross taxable estate for estate tax and the gross estate for fiduciary accounting purposes coincide, with the exception of the widow’s exempt property (EPTL 5-3.1), which is part of the taxable estate only.
The briefs of both parties read the underscored direction reducing the amount of the formula legacy by assets passing to the widow “from me otherwise than under this Will” as applicable to the widow’s exempt property under EPTL 5-3.1. Both conclude that this reduction of the marital formula legacy gives rise to a limited right of election (EPTL 5-1.1, subd [c], par [1], cl [H]). The executor allots to the widow one half of the adjusted gross taxable estate plus an amount which his most recent memorandum estimates to be $5,000 as her limited right of election. His computation of the adjusted gross estate presumably included the exempt property which should be excluded in computing the net estate on which the elective share is based (EPTL 5-1.1, subd [c], par [1], cl [B]). The correct starting point, the value of the estate for fiduciary accounting purposes, is a figure which excludes the $6,000 of exempt property. The executor’s approach would give the widow the benefit of a larger estate on which to compute her fraction. (Matter of Taliento, 9 Misc 2d 167; Matter of Miles, *856 131 NYS2d 328; Matter of Lorch, 33 NYS2d 157.) In addition to this claim of a limited right of election arising out of the exempt property the widow claims that she is entitled to her one-half elective share of the estate’s income and appreciation. The executors argue that she is entitled only to the income and gain attributable to the amount of her limited right of election.
At the threshold, the court rejects the parties’ assumption that the widow has even a limited right of election. The Court of Appeals has held (Matter of Tisnower, 40 Misc 2d 778, affd 23 AD2d 535, revd 16 NY2d 906) that a bequest to a widow which otherwise satisfied her statutory elective share did not give rise to a right of election in the amount of the exempt property where the will expressly provided: “ ‘The foregoing provisions for the benefit of my said wife are, and are intended to be, in lieu of all claims which my said wife may have as surviving spouse, whether in the exercise of a right of election, exemption or otherwise’ ”. (40 Misc 2d 778, 779, supra; emphasis added.) In Tisnower, the court reversed the decisions of Surrogate Di Falco and the Appellate Division without opinion on the authority of Matter of Galewitz (3 Misc 2d 197, affd without opn 3 AD2d 736, affd 5 NY2d 725). The Galewitz will did not expressly condition the wife’s bequests on the surrender of the right to exempt property although it provided that they were: “ ‘in lieu of dower or of any other interest in my estate or in any property owned by me or in which I have an interest at the time of my death, and in bar of her right of election’ ”. (3 Misc 2d 197, 200, supra.)
The Surrogate interpreted the legacy as not conditioned on foregoing the exempt property and held that such property passed independently of the will. Even were we to construe the marital legacy at hand as so conditioned, Tisnower (supra) would render such a condition inoperative, apparently on the ground that exempt property passes to the widow outside the will whose terms should be read without reference to such property. Moreover, the language in the instant will is closer to the Galewitz provisions since the exempt property is not expressly offset. (See Matter of Berger, 22 Misc 2d 860.) As the court said in Galewitz (3 Misc 2d 197, 201, supra), “[t]he will is a carefully planned in *857 strument completely free of self-defeating errors so gross as that which the widow insists it contains.”
In Matter of Hartzberg (21 Misc 2d 1059), Surrogate Di Falco did sustain a limited right of election (arising from a direction to offset the widow’s legacy by property passing to her outside the will) based upon the exempt property (together with Totten trusts passing to the widow, at a time before the addition of testamentary substitutes to the right of election). That decision, however, antedates Tisnower (supra).
This court holds that the widow’s exempt property does not offset her marital deduction legacy of one half of the adjusted gross estate. As a result, the widow reaps the benefit of this exempt property twice since it does form a part of the adjusted gross estate on which her legacy is computed.
If the court had accepted the parties’ assumption that the exempt property occasioned a limited right of election, it would have been necessary to determine the extent of the widow’s ensuing right to share in income and appreciation. The exercise of a limited right of election does raise this issue and there have been very few cases on point and no thorough analysis of the issue. In general, where a surviving spouse has an unlimited right of election to a one-third or one-half share of the decedent’s net estate, the courts have treated that right as if it were a fractional share in intestacy, which does participate proportionately in the estate’s appreciation, depreciation and income during the period of administration, rather than as a dollar legacy which does not. (E.g., Matter of Goldsmith, 177 Misc 298; Matter of Oakley, 175 Misc 463; Matter of Byrnes, 149 . Misc 449; Matter of Hubbell, 65 NYS2d 40; see Alexandria Nat. Bank v Thomas, 213 Va 620; surviving spouse who elects to take against will as entitled to increase or profit of estate accruing after testator’s death; Ann., 50 ALR2d 1253.) There is a contrary decision in Matter of Spinelli (86 Misc 2d 1039) which is probably limited to elections against testamentary substitutes. The statute governing the right of election (EPTL 5-1.1) is silent on the question of the right to share in the estate’s income and appreciation. Nor do the provisions of the principal and in *858 come statute (EPTL 11-2.1, subd [d]) resolve this issue since they allocate income earned during administration as between classes of testamentary beneficiaries and the question here is one of classification — whether a limited right of election is to be treated as a fractional or as a pecuniary bequest. The widow’s claim here to a full one half of net appreciation and income is based upon her interpretation of the language of EPTL 5-1.1 (subd [c], par [1], cl [H]). She reads the statute as directing that the testamentary provisions for her be deducted from her one-half share and includes one half of the income and appreciation in the said one-half share.
Matter of Epstein (176 Misc 494, 499) involved a limited right of election. The widow’s one-third share was reduced by the value of a $50 grave which the will devised to her. The court awarded her a pro rata share of income received during the executorial period “excluding the value of the grave from the income computation”. The decision, however, cites in apparent reliance thereon, Matter of Curley (160 Misc 844) which seemingly awards income, in the case of a limited right of election, on the entire one half. And Curley professedly relies on Matter of Byrnes (149 Misc 449) which involved an unlimited right of election. Two other cases are not explicit, but can be read as confining the spouse’s right to income on her limited right of election. (Matter of Tannenbaum, 25 Misc 2d 287; Matter of Gidding s, 198 Misc 536.)
This court would be reluctant to conclude that the typical pecuniary marital deduction formula language quoted above was converted to a fractional legacy by virtue of the limited right of election here asserted. (The issue of whether this legacy is converted to a fraction by subsequent language in the will is treated below.) The New York election statute is probably unique in permitting the satisfaction of the elective share by a trust to pay income to the spouse for life. (Third Report of the Temporary State Comm on Law of Estates, NY Legis Doc, 1964, No. 19, Report No. 1.10B, p 201 [hereinafter cited as Bennett Commission Report].) Most jurisdictions require an outright legacy. There is no right of election where widow receives a pecuniary legacy with no share in income or gains if the amount of the legacy *859 meets the statutory requirement of one half or one third. (Cf. Matter of Jacobsen, 61 Misc 2d 317, affd 33 AD2d 760; Covey, The Marital Deduction and the Use of Formula Provisions [2d ed], p 34 [hereinafter cited as Covey].) Indeed, there is no right of election where the will creates a charitable remainder annuity trust of the appropriate amount and restricts the spouse’s income to 5% of the initial value of the trust property. (EPTL 5-1.1, subd [c], par [1], cl [K]; Matter of Gerard, 84 Misc 2d 213.) This reflects a legislative policy of harmonizing the elective share with the realities of estate planning. That policy would not be served by allowing a limited right of election to convert a pecuniary marital deduction legacy to a fractional legacy. A general power of supervision inheres in this court to ensure the fair participation of the surviving spouse and preserve the testator’s testamentary plan (Matter of Devine, 147 Misc 273; Bennett Commission Report, p 196). In this court’s opinion the limited right of election discussed in this case, where the widow receives all the rest of her elective share outright and the right of election asserted (albeit unsuccessfully) was related solely to the exempt property, would not entitle the widow to income and appreciation on any more than the property which is the subject of her limited right of election. It has been suggested (Casner, Estate Planning [4th ed], p 747; Shaiman, The Widow’s Election —Tax and Fiduciary Considerations, 40 Temple LQ 1; Covey, pp 53, 219) that an outright pecuniary marital deduction legacy is vulnerable to an attempt by the Internal Revenue Service to reduce the allowable marital deduction because the legacy’s nonparticipation in income earned during administration constitutes a material limitation on the right to income from the property. (Treasury Reg, § 20.2056 [b]-4, subd [a].) If such a challenge by the Internal Revenue Service is made successfully, outright pecuniary marital deduction legacies will presumably be drafted to include pro rata estate income but this does not seem to be the practice at this time.
2. THE WIDOW’S CLAIM TO APPRECIATION BY VIRTUE OF THE “HYBRID” MARITAL DEDUCTION FORMULA.
The genesis of this claim is in the provisions of the will for distribution of the marital deduction legacy which *860 immediately follow the formula gift set out earlier in this opinion: “I expressly empower my Executors in their sole and absolute discretion to satisfy this bequest in cash or in kind or partly in cash and partly in kind. I direct that each item of property which my Executors shall distribute in kind shall be valued for purposes of satisfaction of this bequest at its fair market value on the date of distribution thereof unless such fair market value shall be greater than its cost for Federal income tax purposes in which event each such item of property shall be valued for purposes of satisfaction of this bequest at its Federal income tax cost. It is my intention and I hereby expressly direct that in no event shall the aggregate of the cash and the fair market value on the date of distribution of each item of property distributed by my Executors in satisfaction of this bequest be less than the amount of this bequest. I direct that in no event shall my Executors allocate to this bequest in satisfaction thereof any property which does not qualify for the marital deduction for Federal estate tax purposes.”
The executors here distributed $200,000 to the widow in cash, virtually simultaneously with the expiration of the seven-month period under SCPA 1802, having previously distributed to her tangible personalty valued at $8,415. This represents a substantial portion of her legacy. During the period which preceded the cash distribution to the widow the executors sold assets, presumably in part to satisfy her legacy, and realized gains of $15,473.28 and losses of $5,630.80. The widow seeks to share in the net gains of approximately $9,000 on the ground that the testator intended that she participate in gains when he provided that the executors could make distribution to her in kind at the estate’s basis (“its cost for Federal income tax purposes”) if the market value of the assets to be distributed exceeded their basis at the date of distribution.
It is clear that in the first paragraph of article eighth quoted earlier the testator used the traditional language of a pecuniary bequest which does not carry the right to share in appreciation. (See Matter of Umpleby, 43 Misc 2d 932.) The widow contends, on the authority of Matter of McDonnell (45 Misc 2d 57) and Matter of Leonard (45 Misc 2d 534), that the ensuing provisions for payment in kind re- *861 fleet the testator’s intent that she share in appreciation and to that extent convert the legacy into a fractional share. The cited cases reflect an extension of the approach approved by the Court of Appeals in Matter of Bush (2 AD2d 526, affd 3 NY2d 908). In this court’s view the issue is whether the passage of EPTL 2-1.9 in 1965 and the hegemony of estate planning in will drafting justify a departure from this approach. Bush held that where the testatrix had authorized her executor to pay all legacies using appraised values (found to mean estate tax values) her husband was entitled to appreciation on the marital deduction legacy which was in the pecuniary form. The Bush rule was also applied where, as here, the language permitting payment at tax values was confined to the marital legacy. (E.g., Matter of Leonard, supra.)
The background for this issue begins with the income tax rule that an executor who distributes appreciated property in kind at current values in satisfaction of a pecuniary legacy incurs capital gains tax. (Matter of Umpleby, supra; Casner, Estate Planning [4th ed], p 771.) At present no capital gains tax is levied when such property is distributed to a fractional taker on the theory that no satisfaction of a fixed obligation takes place. (Casner, Estate Planning [4th ed], p 779.) The pecuniary marital deduction formula legacy is regarded by many draftsmen and fiduciaries (Manning, Estate Planning, p 29 [hereinafter cited as Manning]; PLI, Advanced Will Drafting, 1980, p 89) as being significantly simpler to administer than the fractional share. Furthermore, it minimizes the amount taxable in the survivor’s estate as well as protecting the survivor against depreciation. To eliminate the capital gains disadvantage, draftsmen conceived the language (see Matter of Leonard, supra) authorizing distribution in kind at estate tax values. (Manning, p 26.)
The New York courts, however, applied the Bush rule to this language and thus converted the pecuniary legacy into a fractional share by ruling that this language conferred the right to appreciation. The court’s rationale in Bush (supra) was that it would be unjust and inequitable to give all of the appreciation to the son. Bush is regarded as an application of the fiduciary’s duty to act impartially as be *862 tween beneficiaries which precluded him from distributing unappreciated assets to the spouse and appreciated assets to the other beneficiaries. (Matter of McDonnell, 45 Misc 2d 57, supra; Covey, p 105.) This duty of impartiality would presumably also prevent the executors from distributing cash to the spouse and allocating any gains or appreciated assets to the remaining beneficiaries. (Matter of McDonnell, supra; Covey, p 105.)
The Internal Revenue Service became concerned about the common practice of including the authority to pay pecuniary marital formula legacies in kind using estate tax values because, if allowed to operate literally (as our courts had been gradually refusing to do), it would allow satisfaction of the marital deduction gift with property whose total value at distribution had declined and was less than the amount of the marital deduction, thus saving the estate tax in the second estate while obtaining the deduction in the first one. As a result, the Service issued Revenue Procedure 64-19 (1964-1 Cumulative Bulletin 682) which provided that the marital deduction would be disallowed when a pecuniary legacy could be satisfied at tax values unless one of two tests were met: either the fiduciary must distribute assets having an aggregate value of no less than the amount of the pecuniary marital deduction allowed (referred to as the “aggregate” approach) or, the fiduciary must distribute assets, including cash, fairly representative of all property available for distribution (referred to as the “fairly representative” approach). The “fairly representative” approach in effect converts a pecuniary legacy to a fractional one. The case law in New York was developing along the lines of the “fairly representative” approach although not every issue on this point had been finally resolved. (Covey, pp 104-105). The area was still regarded as somewhat uncertain.
The New York Legislature responded to this Revenue Procedure with section 17-f of the Personal Property Law, which is now EPTL 2-1.9, to insure that the wills of New York testators did not lose the marital deduction. (Fourth Report of the Bennett Commission, NY Legis Doc, 1965, No. 19, Report No. 5.4.2A, p 307.) “Where a will or a trust agreement authorizes the fiduciary to satisfy wholly or partly in kind a pecuniary disposition or transfer in trust *863 of a pecuniary amount and the instrument requires the fiduciary to value the assets selected by the fiduciary for such distribution as of a date other than the dates of their distribution, the assets selected by the fiduciary for that purpose, together with any cash distributed, shall have an aggregate value on the dates of their distribution amounting to no less than, and to the extent practicable no more than, the amount of.such testamentary disposition or transfer in trust as stated in, or determined by the formula stated in, the instrument.” (EPTL 2-1.9, subd [b], par [2].) This statute adopted the aggregate approach, rather than the Bush rule, by providing that whenever a pecuniary disposition requires the fiduciary to value the assets distributed as of a date other than the date of distribution, the assets and cash distributed shall have an aggregate value on distribution amounting to no less and to the extent practicable no more than the amount of the pecuniary disposition. (Rohan, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 2-1.9, p 42, 1979-1980 Pocket Part.) Under the aggregate approach the fiduciary is clearly relieved of the duty of impartiality with regard to the distribution of appreciation and is authorized, certainly in the case of a simple provision for payment at estate tax values, to pay a pecuniary marital legacy in cash. It has been suggested that the statute imposes on the fiduciary a duty to minimize this legacy. (Covey, pp 106-108.)
While the Legislature’s response to Revenue Procedure 64-19 was in preparation, estate planners evolved the so-called hybrid form of marital .deduction formula legacy which was used in this decedent’s will. (See Manning, p 26; Covey, p 99.) The purpose of the hybrid form, which permits the executor to use the lower of estate tax or date of distribution values to fund the marital legacy, is to satisfy the Revenue Procedure by putting a “floor” under the legacy so that the spouse in no event receives less than the amount of the marital deduction, but avoid a “ceiling” or direction to pay a precise amount, in an effort to permit the distribution of appreciated assets without the realization of gain. Avoidance of the capital gains tax on the distribution of appreciated assets was, as hereinabove noted, the purpose of the earlier form authorizing payment at estate tax values. *864 (Covey, p 113; Covey, The Marital Deduction: Revenue Procedure 64-19 and Formula Provisions, 36 NY St Bar J 317.)
The decision in Matter of McDonnell (45 Misc 2d 57, supra) on which the widow relies, involves a hybrid legacy. It was handed down by Surrogate Bennett on February 4, 1965 before the enactment of the statutory predecessor of EPTL 2-1.9. The estate in that case had experienced a substantial appreciation in the value of certain assets which were subsequently liquidated and the executors proposed to satisfy the marital legacy by a distribution of cash without any share of the appreciation. In the instant case the executors have in fact made distribution in cash of the major portion of the widow’s legacy. The above-cited McDonnell decision held that the widow’s legacy must share in appreciation, although acknowledging that such a ruling blurred the distinction between pecuniary and fractional bequests. The decision rests principally on the Bush rule that this result comports with the presumed intent of the testator. Surrogate Bennett noted that the paramount consideration motivating the Bush rule was the requirement of impartiality on the part of the executors. The court found that the added hybrid component of the legacy was “just as much an indication of the testator’s concern for the widow, who under such provision not only may share in any appreciation but is protected against depreciation.” (Matter of McDonnell, 45 Misc 2d 57, 59, supra.) An opinion amplifying the one just quoted sets out the mechanics for converting the widow’s ostensible pecuniary legacy to a fraction for the purpose of allocating the net appreciation which had been awarded. (Matter of McDonnell, 45 Misc 2d 1062.)
The statute embodying New York’s response to Revenue Procedure 64-19 became effective on July 2, 1965 (L 1965, ch 693) and was retroactive. Since the McDonnell estate had not yet been distributed, the executors made a motion askingThe court to reconsider its earlier decisions in the light of the new statute (Matter of McDonnell, NYLJ, Oct. 21, 1965, p 20, col 8). The court sustained its previous decisions on a theory which in this court’s view rests very heavily on the injustice of applying the retroactive statute to an estate *865 in which the court had already upheld the widow’s right to appreciation.
The adoption by EPTL 2-1.9 (which is not discussed by the parties’ numerous briefs herein) of the “aggregate approach” reflects a legislative determination that testators should not be presumed to intend the distribution of pro rata appreciation on pecuniary formula marital legacies payable at estate tax values. It rejects the “fairly representative approach” toward which the courts were tending and removes the duty of impartiality in distributing appreciation as to such legacies. The statutory rule thus vitiates the force of the Bush line of precedents. Although the last cited McDonnell opinion quite rightly notes that the new statute was not essential to protect a hybrid legacy from the force of Revenue Procedure 64-19, since the legacy itself satisfies the procedure by putting a “floor” under the legacy, this does not negate the fact that the statute overturns the precedents which were the authority for allocating appreciation to the pecuniary legacy.
Certainly the literal language of EPTL 2-1.9 applies to the hybrid legacy since it, too, sanctions distribution in kind at a value other than contemporary market value where estate tax values are lower.
A distinguished commentator (Covey, p 118) has questioned whether the mandate of EPTL 2-1.9 (subd [b], par [2]) to pay no more than the amount of the legacy “to the extent practicable” applies to executors under a hybrid legacy. He suggests that such an executor should have discretion to decide whether to distribute cash or appreciated assets. That issue is not before us since the executors have not distributed appreciated assets.
This court does not read the hybrid component of the pecuniary marital legacy at issue as an expression by the testator of a contrary intention which would sanction deviation from the policy of EPTL 2-1.9. Among the powers conferred upon the executors in article eleventh of the will is the power: “To distribute in the exercise of sole and absolute discretion any property in kind at market value unless otherwise directed herein or in cash, or partly in kind and partly in cash, and to allocate among the recipients the prop *866 erty distributed in kind without any obligation to make proportionate distributions or to distribute to all recipients property having an equivalent Federal income tax cost.” (Emphasis added.) This provision seems to the court to contemplate disproportionate, i.e., not impartial, allocations and to authorize them. It supports this court’s interpretation that the testator intended to confer upon his executors the discretion to decide whether the widow would be paid in cash without a share of appreciation or in appreciated assets. In addition, paragraph 12 confers upon the executors the power, in their sole and absolute discretion, to exercise tax options, including the right to decide whether to deduct administration expenses on the estate or income tax returns “and whether to make an adjustment from income to principal because of any such decision and any such determination shall be final and binding upon all beneficiaries hereunder”. This is further indication of the testator’s intention to confer substantial discretion upon his executors in making estate planning decisions which have significant effects upon the net value of the ultimate distribution to the beneficiaries.
The intention of the testator is always the primary concern. The court’s conclusion in Bush (2 AD2d 526, supra) was that the testatrix would have intended her husband to share in appreciation. But in that case, which perhaps arose in a climate somewhat less sophisticated with regard to estate planning, the will did not have a pecuniary marital clause immediately followed by an authorization to pay this legacy at estate tax values. Rather, the executors’ general powers included the power to distribute all legacies at estate tax values. Such a general direction more naturally carries with it the executorial duty to act impartially. Bush, and the ensuing cases which took the same view when the language for payment at estate tax values was included only in the marital deduction legacy, in effect represent a constructional preference in favor of the surviving spouse. (Matter of Lewine, 55 Misc 2d 734; Matter of Leonard, 45 Misc 2d 534, supra.) Such a preference is also evident in the exercise of considerable judicial ingenuity to find that a given provision creates a fractional rather than a pecuniary legacy. (Matter of Palitz, NYLJ, Aug. 20, 1968, p 2, col 7, *867 affd 32 AD2d 905, affd 27 NY2d 540.) But that doctrine, it seems to this court, must be reassessed in the light of EPTL 2-1.9 which reflects a legislative determination to give effect to pecuniary marital legacies and to the tax planning purpose of the authority to pay at tax values by not converting them into fractional shares. A change of attitude in this direction is reflected in the majority opinion by the Appellate Division in Matter of Epping (29 AD2d 410). (See Matter of Jackson, NYLJ, Oct. 28, 1976, p 7, col 1.)
The widow’s objection to the executor’s failure to allocate to her any share of the estate appreciation realized during the seven months before she received a substantial partial distribution is accordingly dismissed. The remaining issue with respect to the treatment of commissions on estate income in admeasuring the widow’s elective share may well be moot in light of this court’s decision concerning the exempt property. The question is whether the direction to deduct administration expenses in computing the net estate to determine whether the widow has received her full elective share under EPTL 5-1.1 (subd [c], par [1], cl [B]) includes commissions on estate income. Under EPTL 11-2.1 (subd [d], par [1]), commissions on estate income are, unless the will provides otherwise, charged against income. There do not appear to be any decisions on the applicability of this statute to the right of election but that result is equitable and effects a harmonious statutory pattern. Commissions on income should therefore not be considered an administration expense in computing the elective share.